# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| MICHAEL RAY | § | |
| | § | |
| v. | § | NO. 4:23-CV-01116-SDJ-BD |
| | § | |
| AMAZON.COM SERVICES, LLC | § | |

## MEMORANDUM OPINION AND ORDER

Defendant Amazon.com Services, LLC, moved to compel discovery responses from plaintiff Michael Ray. Dkts. 23 (original motion), 37 (amended motion), 38 (supplement to the amended motion); *see* Dkts. 24, 44 (responses), 27, 28, 46 (replies). The original motion will be dismissed as moot and the amended motion granted in part and denied in part.

## BACKGROUND

Ray sued Amazon for discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 *et seq.* Last year, the court held a hearing on a discovery dispute and gave Amazon permission to file a motion to compel as to several discovery requests, including responses to interrogatories 3 and 5 and requests for production 10 and 11. *See* Minute Entry for Dec. 16, 2024. Two months later, Amazon moved to compel. Dkt. 23. Shortly after, Ray amended his interrogatory responses (for the third time), but he did not amend his responses to Amazon's requests for production. *See* Dkts. 37-5 (request for production responses), 37-11 (interrogatory responses). He also filed an "additional attachment" to his response to the motion to compel, advising the court that he believed his third supplemental responses mooted issues in the motion to compel. Dkt. 33 at 1. The court ordered Amazon to file an amended motion to compel that removed any mooted issues. Amazon did so, complaining that (1) Ray misrepresented the content of his earlier interrogatory responses in his third supplemental responses; and (2) Ray's responses to interrogatories 3 and 5 and requests for production 10 and 11 are still deficient. Dkt. 37; *see* Dkts. 44 (response), Dkt. 46 (reply).

## LAW

In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Information "need not be admissible in evidence to be discoverable." *Id.* And to be relevant, "a document or information need not, by itself, prove or disprove a claim or defense or have strong probative force or value." *Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 280 (N.D. Tex. 2017).

The court's local rules provide several "observations . . . for counsel's guidance in evaluating whether a particular piece of information is 'relevant to any party's claim or defense'":

(1) it includes information that would not support the disclosing parties' contentions;

(2) it includes those persons who, if their potential testimony were known, might reasonably be expected to be deposed or called as a witness by any of the parties;

(3) it is information that is likely to have an influence on or affect the outcome of a claim or defense;

(4) it is information that deserves to be considered in the preparation, evaluation, or trial of a claim or defense; and

(5) it is information that reasonable and competent counsel would consider reasonably necessary to prepare, evaluate, or try a claim or defense.

Loc. R. CV-26(d) (quoting Fed. R. Civ. P. 26(b)(1)). The court has broad discretion to control discovery. *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 261 (5th Cir. 2011).

Federal Rule of Civil Procedure 37(a)(1) allows a party, on notice to other parties and all affected persons, to "move for an order compelling disclosure or discovery." A party must make any argument in support of its objection in its response to the motion to compel; otherwise, the objection is forfeited. *CHU de Quebec-Universite Laval v. DreamScape Dev. Grp. Holdings, Inc.*, No. 4:21-CV-00182-SDJ, 2022 WL 1719405 at *2 (E.D. Tex. May 27, 2022).

## DISCUSSION

### I. Misrepresentations

Amazon faults Ray for misrepresenting the content of his previous interrogatory responses. Dkt. 37 at 1–2, 4–5. Ray did not respond to that argument, *see* Dkt. 44, which Amazon interprets as a concession, Dkt. 46. But Amazon has not asked the court to take any action, and after considering the alleged misrepresentations in response to interrogatory number 5, the court will not exercise its inherent power to sanction.

### II. Interrogatory No. 3

Amazon's third interrogatory reads:

> Identify each employer for whom you worked for the five (5) years before the start of your employment with Amazon through the present, including your dates of employment, job position, ending rate of pay, whether you left that job voluntarily or involuntarily, and the specific reason why your employment was terminated or why you left that job. Include in your answer not only work performed as an employee for a company, but also any work you have done as a self-employer or independent contractor.

Dkt. 37-11 at 2. Ray responded:

> Plaintiff does not have sufficient knowledge, information, recollection, and/or recall to fully answer this Interrogatory. By way of further response:
>
> • Daltile in Sunnyvale, TX as a Maintenance Electrician III from around February 2016 to January 2017, and voluntarily resigned.
>
> • Amerifleet, in Euless, TX as an Electrician from February 2017 to December 2017, was laid-off as the plant closed.
>
> • Trend Offset Printing in Carrollton, TX as a Maintenance Electrician, from January 2018 to April 2019, voluntarily resigned.
>
> • CW Services, LLC or C&W Facility, in Dallas, TX as a Maintenance Electrician, February 2020 to August 2021, and voluntarily resigned to work for Defendant.
>
> • Amazon.com Services, LLC, Dallas, TX as a Maintenance Technician III from August 1, 2021 to August 12, 2022 before involuntary separation.
>
> • CB Manufacturing Company (PepsiCo), in Mesquite, TX, as a Maintenance Technician III from around August 2022 to January 2023 before voluntary separation.

- Koetter Fire Protection Services (KET) in Dallas, TX from around November of 2022 to December of 2022 before voluntarily resigning.

- Dolcol Tekni-Plex or Tekni-Plex, Inc., Dallas, TX as a full-time Maintenance Tech III from around December 2022 through June of 2023 before voluntary separation to work for Wal-Mart.

- Amazon, Lancaster, TX, as a full-time Maintenance Tech III from around July 3, 2023 to January 2024 before being separated.

- Medline Industries in Wilmer, TX as a Maintenance Tech II from about mid-March 2024 to August 2024, before being involuntarily separated.

- DHL Packaging (Global Mail, Inc.), in Lewisville, TX, as Maintenance Tech III for about a month in late 2024 before voluntary separating to work for The New IEM, LLC.

- The New IEM, LLC, based out of Fremont, CA as Field Service Technician from September 2024 to February 2025 before involuntary separation.

- Plaintiff worked for Encore Wire, McKinney, TX as a Maintenance Technician from February 17, 2025 to March 14, 2025 before voluntary resigning for Schneider Electric.

- Schneider Electric in Carrolton, TX as a Senior Field Services Representative beginning on March 31, 2025.

Dkt. 37-11 at 2–3 (boldface removed from this and all other quotations).

Amazon considers that response insufficient because it "fails to provide the dates of employment and ending rate of pay for all employers listed" and fails to include information "for three of [Ray's] prior employers that [Ray] identified in his First and Second Supplemental Interrogatory Answers, to include Papa John's, Strom Engineering and AFIMAC." Dkt. 37 at 8. Amazon also faults Ray for failing to provide his specific dates of employment so that Amazon can calculate his back-pay damages, "which require[s] Amazon to identify any gaps in employment, and are also patently relevant to Amazon's failure to mitigate affirmative defense if [Ray] either voluntarily resigned or was terminated from one of his subsequent employers." *Id.* at 9.

Amazon adds that Ray has an obligation to gather that information and provide it in a single interrogatory response because the information is within his possession, custody, or control. Finally, in the supplement to its motion, Amazon explains that it tried to use authorizations

4

provided by Ray to get the information it needs but that it has not been able to "identify and locate the proper entity" "without [Ray] providing the necessary contact information for the employers or W-2's containing the employer's full legal name and contact information." Dkt. 38 at 1.

Ray responds that he has identified his employers, their locations, and his approximate dates of employment and that any further information can be obtained by Amazon through the authorizations he has signed. Dkt. 44 at 5. He adds that ending rates of pay for the employers he worked for before Amazon, which include Papa John's, Strom Engineering, and AFIMAC, are immaterial and that he does not know the rates of pay for his employers after Amazon but that the information could be obtained through the authorizations or other documents Ray has produced. By way of example, Ray points to his response to interrogatory number 10, which is not at issue here, in which he "goes step-by-step with reference to records in setting out his backpay damages claim." *Id.* He clarifies that in his calculation, he does not include any loss of stock options and equity or mention any loss of benefits, so Amazon's desire to discover those "arises from a theoretical presupposition [that Ray] will . . . make the claim" for them. *Id.* at 7. In sum, Ray states that the information requested is "(a) not relevant to claims or defenses, (b) not proportional to the needs of the case, and (c) unduly burdensome and expensive for [Ray] to obtain in light of its relevance to the matter." *Id.* at 8.

Amazon argues that Ray does not properly identify his employers because the definition of "identify" in its interrogatory requests required Ray to include "the person's or entity's full name and present or last known address and telephone number, and when referring to an entity, the full name of the owner, manager, or other contact person," Dkt. 46 at 2, and without that information it cannot send the authorizations to those employers. Amazon disagrees that Ray has provided sufficient documentation for it to glean all of the information it needs, as indicated by the chart in its motion showing which documents are missing for which employers, Dkt. 37 at 10–11, and that Ray's argument fails because an interrogatory response should be all-encompassing. In other words, Amazon maintains that it should not have to look to other documents to get its answer. Amazon further disagrees that Ray's back-pay calculation from interrogatory 10 is a sufficient

5

substitute for the information and documentation it requests because Amazon is "not required to take [Ray's] word at face value." Dkt. 46 at 3.

Rule 26(b)(1) requires that a matter be relevant to be discoverable. Based on the record, it is not clear why the information about Ray's pre-Amazon employment is relevant. The court will not compel Ray to provide it. The court agrees with Amazon, however, that the post-employment information (including any lost stock options, equity, or benefits) is relevant to calculating damages. *See Jackson v. Host Int'l, Inc.*, 426 F. App'x 215, 222 (5th Cir. 2011) (per curiam); *Pettway v. Am. Cast Iron Pipe Co.*, 494 F.2d 211, 263 (5th Cir. 1974). And notwithstanding his present contention otherwise, Ray has sought to recover the value of those benefits. He mentions them as a loss in his complaint, Dkt. 1 at 7–8, and seeks "compensatory damages, punitive damages, equitable relief, costs of litigation, attorney's fees, and all other relief the Court deems equitable and just," *id.* at 9.

That said, Amazon's request is not proportional to the needs of the case, considering that Ray has provided Amazon with an authorization to obtain the requested information itself. But because Ray has not given Amazon the information it needs to submit the authorizations to the relevant entities, *see* Dkts. 38-1, 38-2, Ray must supplement his response to include the address for each employer, which should appear on the relevant W-2 tax forms.

### III. Interrogatory No. 5

Amazon's fifth interrogatory reads:

> Identify all persons or entities by whom or by which you have been employed, including self-employment or contracting relationship, and/or from which you received any compensation, wages, income, gifts, loans or other payments of money since your employment with Amazon ended. In answering this Interrogatory, for each employer identified, provide the identity of the employer, position/job held, date hired, termination date, reason for leaving, rate of pay, total earnings to date, and for any source of money obtained from a source other than an employer, specify the source of any such payments, the amount of any such payments, the date(s) upon which you received any such payments.

Dkt. 37-11 at 3. Ray responded:

> After reasonable investigation, Plaintiff does not have sufficient knowledge, information, record, recollection, or recall to fully answer this Interrogatory. By way of further response:
>
> • CB Manufacturing Company (PepsiCo), in Mesquite, TX, as a Maintenance Technician III from around August 2022 to January 2023 before voluntary separation.
>
> • Koetter Fire Protection Services (KET) in Dallas, TX from around November of 2022 to December of 2022 before voluntarily resigning.
>
> • Dolcol Tekni-Plex or Tekni-Plex, Inc., Dallas, TX as a full-time Maintenance Tech III from around December 2022 through June of 2023 before voluntary separation to work for Wal-Mart.
>
> • Amazon, Lancaster, TX, as a full-time Maintenance Tech III from around July 3, 2023 to January 2024 before being separated.
>
> • Medline Industries in Wilmer, TX as a Maintenance Tech II from about mid-March 2024 to August 2024, before being involuntarily separated.
>
> • DHL Packaging (Global Mail, Inc.), in Lewisville, TX, as Maintenance Tech III for about a month in late 2024 before voluntary separating to work for The New IEM, LLC.
>
> • The New IEM, LLC, based out of Fremont, CA as Field Service Technician from September 2024 to February 2025 before involuntary separation.
>
> • Plaintiff worked for Encore Wire, McKinney, TX as a Maintenance Technician from February 17, 2025 to March 14, 2025 before voluntary resigning for Schneider Electric.
>
> • Schneider Electric in Carrolton, TX as a Senior Field Services Representative beginning on March 31, 2025

Dkt. 37-11 at 4–5.

Amazon argues that, although Ray "identifies the employers, job position, some date ranges, and reasons for separation, he still fails to provide complete contact information for the employers identified, the ending rate of pay, or earnings received to-date for all employers identified." Dkt. 37 at 8. It adds that "[c]ontact information for these employers should be contained on the W-2's [Ray] received from each employer, which should have been filed with his annual tax returns with the IRS." *Id.* Amazon again objects to Ray's incomplete response, arguing that the information it seeks is within Ray's possession, custody, or control and therefore Ray must provide it all in a

7

single interrogatory response. Similarly, Amazon again asserts that the information is relevant to calculate back pay.

Ray argues that interrogatory number 5 is "essentially the same" as interrogatory number 3 except that it seeks only information for post-Amazon employment. Dkt. 44 at 1. His opposition to Amazon's motion is therefore the same for both requests: namely, that the information requested is not proportional to the needs of the case and is unduly burdensome and expensive to obtain in light of its relevance to the matter.

Amazon disagrees, stating that the two seek "similar, but not identical information." Dkt. 46 at 2. Regardless, Amazon's reply includes the same argument for both, which is that: (1) Ray did not properly identify his employers and, without that information, Amazon cannot send authorizations to those employers; (2) Ray has not provided sufficient documentation for Amazon to glean all of the information it needs and did not draft a response that includes all of the information Amazon requested; and (3) Ray should be compelled to provide the requested information so Amazon can independently calculate back pay because it is not required to take Ray's calculation of back pay "at face value." *Id.* at 3.

Amazon is correct that interrogatory 5 requests information different from interrogatory number 3. Specifically, number 5 also seeks information for sources of income other than through employment, such as "workers' compensation benefits, and/or unemployment benefits," since his termination from Amazon. Dkt. 37 at 12. Because it is within the court's discretion whether to reduce back pay by collateral sources of income, that information is relevant and therefore discoverable (even though the court is making no determination at this time whether it will exercise its discretion). *See Johnston v. Harris Cnty. Flood Control Dist.*, 869 F.2d 1565, 1581 (5th Cir. 1989) (holding that, in a Title VII case, "[t]he district court did not err by refusing to deduct from [a plaintiff's] back pay award the amount that he received in social security disability benefits" because "[t]he decision whether to deduct unemployment compensation benefits from a back pay award is left to the trial court's discretion") (citing *Johnson v. Chapel Hill ISD*, 853 F.2d 375, 382 (5th Cir. 1988)); *Guthrie v. J.C. Penney Co.*, 803 F.2d 202, 209 (5th Cir. 1986) (explaining that most

8

courts "have refused to deduct such benefits as social security and unemployment compensation from Age Discrimination in Employment Act awards under "the common law 'collateral source rule,' according to which the defendants may not benefit from payments made to the plaintiff by third parties," but noting that "[w]hile district courts' decisions to deduct social security and similar benefits have been upheld as exercises of discretion, no appellate court has reversed a district court that refused to make a deduction"). Ray must identify and provide an address for the source of any collateral income he received after his employment with Amazon so that Amazon may send an authorization to the appropriate entity or entities.

### IV. Request for Production No. 10

Amazon's tenth request for production reads:

> Please produce all documents reflecting or concerning your efforts to obtain employment (including self-employment) or contract work for the period from August 12, 2022 (the date of your termination) to the present with any employer or company, including, but not limited to, position announcements, internet postings, diaries, logs, calendars, appointment books or other summaries, employment applications, resumes, correspondence, notes, memoranda, and letters of recommendation; any documents submitted by you or on your behalf to any prospective employer; any offers of employment and your responses thereto; any rejections of employment; any documents that refer or relate to your compensation, wages, benefits, and performance in such employment; and any documents that refer to or describe the reasons for any separation or termination from each such employment.

Dkt. 37-5 at 2. Ray responded, "See Plaintiff's production of documents, RAY-0073, 0075 – 108, RAY-0117 to RAY-0186." *Id.*

Amazon faults Ray for not producing "all W-2s, paystubs, and benefit information for all subsequent employers identified by him in Interrogatory Nos. 5 and 10." Dkt. 37 at 10. As previously mentioned, Amazon includes a chart indicating the documents missing for each employer and argues that the information in those documents is relevant to calculate back pay. Ray argues that he has produced the applications, interview notices, offer letters, and similar mitigation records in his possession and has "produced reasonable evidence of his employment history and

9

earnings." Dkt. 44 at 8. Amazon counters that Ray's response fails to acknowledge its chart listing the documents it is still missing.

As before, Amazon can obtain the documents it seeks through its authorizations. Ray need only provide the names and addresses of his subsequent employers.

## V. Request for Production No. 11

Amazon's eleventh request for production reads:

> Please produce all documents referring or relating to income you have received since your employment with Amazon ended, including, but not limited to, compensation earned, self-employment earnings, disability benefits, temporary income benefits, short-term and long-term disability benefits, unemployment benefits, social security benefits, supplemental security income, welfare benefits, W-2s, 1099s, and any wages or payments from subsequent employment or work.

*Id.* Ray responded:

> By way of further response, see RAY-0187 a W2 related to services Plaintiff provided as an employee of PepsiCo (i.e. CB Manufacturing Company, Inc.) in 2022. See RAY-0073 and RAY-0111 through RAY-0115 for the offer of employment email and earnings Plaintiff has had with Medline Industries, LP since his termination from Defendant.

*Id.*

The parties' arguments regarding this request are the same as those regarding request for production number 10. Again, Amazon can obtain the documents it seeks through its authorizations, so Ray need only provide the names and addresses of his subsequent employers.

## CONCLUSION

It is **ORDERED** that Amazon's original motion to compel, Dkt. 23, is **DISMISSED** as moot.

It is **FURTHER ORDERED** that Amazon's amended motion to compel, Dkt. 37 is **GRANTED** in part and **DENIED** in part. It is granted to the extent that Ray must provide Amazon with the names and addresses of his subsequent employers and sources of collateral income. It is denied in all other respects.

10

Considering all of the circumstances and the court's ruling, the parties will bear their own expenses, including attorneys' fees, in connection with Amazon's amended motion to compel. *See* Fed. R. Civ. P. 37(a)(5).

So **ORDERED** and **SIGNED** this 1st day of August, 2025.

                                                                  Bill Davis
                                                                  United States Magistrate Judge